# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>Light Blue Cricket Cell Phone, Model Number SL101AE, IMEI Number 355171433891793, Currently Located in the HSI Syracuse Evidence Storage Room Located At 100 Northen Concourse, Syracuse, New York, 13212, Further Described in Attachment A. | )<br>)<br>)  Case No.   5:25-sw-177 (MJK)<br>)<br>)  USAO No.<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Light Blue Cricket Cell Phone, Model Number SL101AE, IMEI Number 355171433891793, Currently Located in the HSI Syracuse Evidence Storage Room Located At 100 Northen Concourse, Syracuse, New York, 13212, Further Described in Attachment A.

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B,

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C., §§ 2251(a), 2252A(a)(2)(A), and 2252A(a)(5)(B). | Sexual Exploitation of a Child, Receipt or Distribution of Child Pornography and Possession of Child Pornography. |

The application is based on these facts:
See Attached Affidavit.

☒ Continued on the attached sheet.
☐ Delayed notice of ___ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

LINDSEY R VALENTINO
*Digitally signed by LINDSEY R VALENTINO*
*Date: 2025.07.25 13:57:50 -04'00'*

*Applicant's signature*

Lindsey Valentino, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by video conference *(specify reliable electronic means)*.

Date: July 25, 2025

City and state: Syracuse, New York

Hon. Mitchell J. Katz, U.S. Magistrate Judge
*Printed name and title*

*Judge's signature*

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Lindsey Valentino, being duly sworn, hereby state as follows:

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of a light blue Cricket Cell Phone (the "device") and the extraction from this device of electronically stored information. Located within the device to be searched, I seek to seize evidence, fruits, and instrumentalities relating to violations of Title 18, United States Code, Sections 2251(a), (sexual exploitation of a child), 2252A(a)(2)(A) (receipt or distribution of child pornography), and 2252A(a)(5)(B) (possession of child pornography).

2. Your affiant is a Special Agent employed by Homeland Security Investigations (HSI) since September 2019. Your affiant successfully completed the Criminal Investigatory Training Program and the Homeland Security Investigations Special Agent Training at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. While at training, your affiant received training in child exploitation investigations. Your affiant received specialized undercover chat training by the Internet Crimes Against Children (ICAC) Task Force in March of 2023. Prior to working as a Special Agent, your affiant was a United States Border Patrol Intelligence Agent (BPAI) and a Task Force Officer (TFO) with HSI's Border Enforcement Security Task Force (BEST) in Massena, New York. Your affiant has investigated and assisted in the prosecution of child exploitation related crimes, and your affiant has executed several search warrants for various state and federal felony crimes. Prior to working as an intelligence agent and a TFO, your affiant was a United States Border Patrol Agent in Massena, New York and San Diego, California. Your affiant received their Bachelor of Science Degree in Criminal

Justice from Medaille College in Buffalo, New York. Your affiant has investigated similar criminal violations on several prior occasions.

3.      My duties include the enforcement of federal criminal statutes involving the exploitation of children as codified in Title 18, United States Code, Sections 2251-2259. I have received training in the importation and distribution of child pornography and have had the opportunity to observe and review numerous examples of child pornography in many forms of media, including video and computer media.

4.      This affidavit is based upon my personal knowledge, experience, and training, as well as other information developed during this investigation. This affidavit is also based upon the personal knowledge of other HSI Special Agents and New York State Police officers that was shared with your affiant. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5.      Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 2251(a), (sexual exploitation of a child), 2252A(a)(2)(A) (receipt or distribution of child pornography), and 2252A(a)(5)(B) (possession of child pornography), have been committed by Melissa McDougal also known as Melissa Laribee ("MCDOUGAL") and that evidence of these crimes and contraband or fruits of these crimes as described in Attachment B, exist within the device, specifically a light blue Cricket Cell Phone, model number SL101AE, IMEI number, 355171433891793, as described in Attachment A.

6.      On July 16, 2025, the device was given to HSI Special Agent Valentino by Andre and Robyn McDougal (MCDOUGAL's parents), they are the owners and occupants of a

residence in Parish, New York. According to the Andre and Robyn McDougal, the phone belonged to MCDOUGAL. The device was placed into the HSI Syracuse evidence storage room located at 100 Northen Concourse, Syracuse, New York, 13212. Currently, the device remains within the HSI Syracuse evidence storage room.

## TECHNICAL BACKGROUND AND INFORMATION

7. I have training and experience in the investigation of computer-related child pornography crimes. Based on my training, experience, and knowledge, I know the following:

   a. Computers and digital technology, including smartphones, are the primary way in which individuals interested in child pornography interact with each other. Specifically, smartphones serve at least the following functions in connection with child pornography, they can: receive child pornography, communicate with like-minded individuals and minors to trade and discuss child pornography, distribute child pornography using various software, and store child pornography either locally or access files via cloud storage.

   b. The smartphone's ability to store images in digital form makes it an ideal repository for child pornography. It is extremely easy for an individual to take a photo or a video with a camera-bearing smartphone, and have it saved onto the device. Thereafter, the user can upload that photo or video to a cloud storage that is linked to a computer or can upload it to various social media platforms. The user could also send that image or video to other people using SMS or MMS or through one of hundreds of messaging apps you can download onto a phone.

   c. The internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

      Smartphones have access to the internet either via a Wi-Fi connection or through data connection provided by the carrier.

d. Individuals use online resources to retrieve and store child pornography. Some online services allow a user to set up an account with remote computing service that may provide email services and/or electronic storage of computer files in a variety of formats. A user can set up an online storage account (sometimes referred to as "cloud" storage) from any smartphone with access to the internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's smartphone in most cases.

e. Smartphones and other mobile computing devices use mobile applications, also referred to as "apps." Apps consist of software downloaded onto mobile devices that enable users to perform a variety of tasks such as engaging in online chats, sharing digital files, reading a book, or playing a game on a mobile device. Individuals commonly use such apps to receive, store, distribute, and advertise child pornography. Individuals will also use apps to interact directly with other like-minded offenders or with potential minor victims, and to access cloud storage services where child pornography may be stored.

f. Communications by way of smartphone can be saved or stored on the smartphone used for these purposes; storing this information can be intentional or unintentional. Digital information, such as the traces of the path of an electronic communication, may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a smartphone user's internet activities generally leave traces or "footprints" in the

web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

## PROBABLE CAUSE

8. On June 30, 2025, New York State Police (NYSP) barracks in Oneonta, New York received information from a concerned citizen regarding child sexual abuse material (CSAM) on the cellular device belonging to Devin G. LAVALLEY. The concerned citizen described multiple videos LAVALLEY showed her that involved sexual exploitation of children. Given this information and law enforcement database research, NYSP Investigators, with the assistance of the NYSP Computer Crimes Unit (CCU), executed a search warrant at the residence of LAVALLEY in Burlington, New York.

9. During the execution of the search warrant, NYSP Investigators found a black iPhone 7 in the residence which belonged to LAVALLEY. NYSP CCU performed a forensic extraction of the black iPhone 7, and NYSP Investigators conducted a post-Miranda interview with LAVALLEY after he was read and waived his *Miranda* rights.

10. During the interview, LAVALLEY provided information about a woman, MCDOUGAL, he was talking with online, and referred to the conversation as a "sex chat." According to LAVALLEY, MCDOUGAL was living in or around the Parish, New York area and he visited her once. LAVALLEY told investigators MCDOUGAL sent him two videos of her daughter. LAVALLEY claimed the videos were not recorded on his phone, they were sent to his phone by MCDOUGAL. Investigators reviewed the videos LAVALLEY identified as the videos he received from MCDOUGAL that were located on LAVALLEY's black iPhone 7. The videos included the following:

    a. Video identified as "CXEJ8756" is approximately one minute and 33 seconds

    long. The video depicts a female child (V1) approximately two to four years old, laying on her back naked from the waist down. The child's vagina and anus are exposed in the video, and her legs are up in the air. As the video progresses, an adult female's arm and hand are visible around the area of the child's vagina. The adult female's thumb penetrates the female child's vagina during the video. The adult female tells the child to, "relax" and later tells the child, "Don't kick me." At the 50 second mark of the video, the female child says, "Mommy you tickle me."

   b. Video identified as "NHCC1502" is approximately one minute and 30 seconds long. The video starts in a brightly lit room that appears to be a child's room as there are toys on the floor and a child's bed in the corner. As the video continues, a female child approximately three to four years old appears to be sleeping in a bed. The child in the video appears to be the same child identified as V1 above. The adult female goes over to bed and pulls the pants off the female child exposing the child's diaper. The adult female then zooms into the diaper and pulls the diaper aside exposing the female child's vagina.

11.    According to LAVALLEY the above-described videos depicted MCDOUGAL and her child, and, as noted above, they were sent to him by MCDOUGAL. According to LAVALLEY, MCDOUGAL may have tried to send the videos to his Google Email account.

12.    Given the above information, NYSP investigators in Pulaski, New York attempted to locate MCDOUGAL and her daughter. MCDOUGAL was located near the Bass Lake area and agreed to go back to NYSP Pulaski Barracks to discuss the investigation further.

13.    When MCDOUGAL arrived at the NYSP Barracks in Pulaski, NY she was read

her *Miranda* rights with a court-appointed advocate present. MCDOUGAL acknowledged understanding her Miranda rights, which she waived and agreed to speak with investigators. During the ensuing interview, MCDOUGAL stated she met LAVALLEY on a dating site known as, "Meet Me." MCDOUGAL also stated that her daughter was approximately two or three years old at the time. MCDOUGAL further stated she was living at the in-law apartment at her parents' house in Parish, New York when she was interacting and later dating LAVALLEY.

14. During the interview, MCDOUGAL stated LAVALLEY would pick her up in Parish, New York and would bring her and her daughter down to his house in the Burlington, New York area. According to MCDOUGAL, she saw photos and videos of child pornography on LAVALLEY's phone on several different occasions. According to MCDOUGAL, LAVALLEY took photos of her daughter dressed up in red and black, "slutty clothes" while they were at MCDOUGAL's residence in Parish, New York. MCDOUGAL remembered LAVALLEY took photos of her daughter on his black iPhone. MCDOUGAL also recounted a time when LAVALLEY recorded a video of her daughter urinating in a toilet at his house in Burlington, New York.

15. During the interview, NYSP CCU received consent from MCDOUGAL to search her phone. MCDOUGAL told investigators her current phone was new because she recently cracked the screen on her old phone. MCDOUGAL said she frequently gets new cell phones.

16. During the interview, NYSP CCU Investigators showed MCDOUGAL video file "CXEJ8756" referenced above that had been located on LAVALLEY's black iPhone 7. Initially, MCDOUGAL claimed to not recognize the video and did not know where it was filmed. As the video file progressed, MCDOUGAL identified her daughter in the video, then

7

stated, "he forced me to do it." MCDOUGAL also identified herself as the adult in the video. MCDOUGAL stated that the video was taken in her bedroom at her apartment at her parents' residence in Parish, New York. MCDOUGAL claimed her daughter was approximately 2 years old when the video file was produced.

17. During the interview, MCDOUGAL made admissions about recording the video file she was shown and about sending it from her old phone to LAVALLEY's email address. According to MCDOUGAL, she only sent the video file to LAVALLEY.

18. On July 16, 2025, HSI Special Agents and NYSP Investigators went to MCDOUGAL's residence in Parish, NY to talk with MCDOUGAL's parents. During a consensual conversation with Andre and Robyn McDougal, they claimed MCDOUGAL had previously lived in the apartment attached to their house. The McDougal's and the current resident of the apartment allowed investigators to take photos of rooms in the apartment. The floor and window frames of the bedroom in the apartment matched the floor and window frames in video file "NHCC1502" referenced above.

19. Andrew and Robyn McDougal also provided HSI Special Agents with a cell phone that belonged to MCDOUGAL, which is the Subject Device that your affiant seeks authorization to search. They claimed the screen was cracked and they believed the phone was broken and explained that MCDOUGAL had left the phone at their house prior to moving to another residence in January of 2025. Upon receipt of the phone, it was placed in "Airplane Mode", and investigators viewed the model number, SL101AE, and the IMEI number, 355171433891793, to properly identify the phone as more fully described in Attachment A.

### CHARACTERISTICS COMMON TO INDIVIDUALS WHO POSSESS AND/OR ACCESS CHILD PORNOGRAPHY

20. Based on my previous investigative experience related to child exploitation and

child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who access child pornography:

    a. Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses.

    b. Such individuals may collect sexually explicit or suggestive materials on their electronic devices and smartphones for years. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal or gratification.

    c. Such individuals almost always possess and retain their CSAM, and child erotica for many years.

    d. Such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure, and private environment, such as a smartphone. These child pornography images are often maintained for years and may be stored in cloud-based online storage to enable the individual to view the child pornography images. Some of these individuals also have been found to download, view, and then delete child pornography on their smartphone devices on a cyclical and repetitive basis.

    e. Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' smartphones using forensic tools. The very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.

    f. Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, email addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

    g. MCDOUGAL exhibits the common characteristics described above of someone who has a sexual interest in children, and it is likely that her devices have CSAM saved on them.

21. It is common for individuals who have a sexual interest in children to possess multiple devices that have different child pornography images and videos. This is the case because often people will use the internet to download these images, and it will be saved locally on that device. While this is common, it is also common to use programs such as Microsoft OneDrive, DropBox, or others to store some child pornography images and videos so that the user can easily move files from one device to the other. As such, if the person has access to a file sharing app or software, it is more likely that they will have child pornography on more than just a single device given the portability of images using the sharing app or software.

22. Based on my training and experience, I know that electronic devices, like the devices subject to this search warrant that was consensually given to law enforcement by MCDOUGAL's parents, are often used for illegal purposes, including the possession of child pornography.

## SEARCH AND SEIZURE OF DIGITAL DATA

23. I have spoken with law enforcement personnel trained in computer evidence

recovery who have knowledge about the operation of smartphones and the correct procedures for the seizure and analysis of smartphones.

24.     These individuals have participated in the execution of numerous search warrants during which they have seized and/or examined smartphones. These individuals have also participated in several warrants that involved the search and/or seizure of, and has been responsible for analyzing, seized electronic data and records from those systems. It is reasonable to believe that some or all the records sought to be seized will be in electronic/digital format.

25.     The search through the smartphone itself is a time-consuming process requiring the physical seizure of the smartphones to be searched. Software and individual files can be "password protected." Files can be placed in hidden directories; files can be mislabeled or be labeled with names that are misleading. Similarly, files that contain innocent appearing names can in fact be electronic commands to electronically cause the data to self-destruct. Also, files can be "deleted," but, unlike documents that are destroyed, the information and data from "deleted" electronic files usually remains on the storage device until it is "overwritten" by the smartphone.

26.     Therefore, based upon my knowledge, training, and experience, as well as information relayed to me by Special Agents and others involved in forensic examination of computers, I am aware that searches for and seizures of evidence from smartphones require Agents to seize the physical smartphone.

27.     Furthermore, because there is probable cause to believe that the smartphones are all instrumentalities of crimes, they should all be seized as such.

## SEARCH METHODOLOGY TO BE EMPLOYED

28. The search procedure of electronic data contained in smartphones may include the following techniques (the following is a non-exclusive list, as other search procedures, may be used):

    a. Examination of all of the data contained in such smartphone to view the data and determine whether that data falls within the items to be seized as set forth herein;

    b. Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

    c. Surveying various file directories and the individual files they contain;

    d. Opening files in order to determine their content;

    e. Scanning storage areas;

    f. Performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B; and

    g. Performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

## CONCLUSION

29. Based on the foregoing, there is probable cause to conclude that fruits, evidence, instrumentalities, and contraband, including images and videos of child pornography, and

information and data related to the creation, distribution, receipt, and/or possession of child pornography, are currently contained within the devices, as further described in Attachment A, Accordingly, I respectfully request a search warrant be issued by this Court authorizing the search and seizure of the items listed in Attachment B.

ATTESTED TO BY THE APPLICANT IN ACCORDANCE WITH RULE 4.1 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.

LINDSEY R VALENTINO
Digitally signed by LINDSEY R VALENTINO
Date: 2025.07.25 13:58:59 -04'00'

Lindsey Valentino, Special Agent
Homeland Security Investigations

I, the Honorable Mitchell J. Katz, United States Magistrate Judge, hereby acknowledge that his affidavit was attested by the affiant by video conference on the 25th day of July 2025 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
Hon. Mitchell J. Katz
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is a light blue Cricket Cell Phone, model number SL101AE, IMEI number 355171433891793, (the "Subject Device") currently located in the HSI Syracuse evidence storage room located at 100 Northen Concourse, Syracuse, New York, 13212. The Subject Device is pictured below:



**ATTACHMENT B**

All records constituting fruits, evidence, and/or instrumentalities of violations of 18 U.S.C. § 2251(a) (sexual exploitation of a child), § 2252A(a)(2)(A) (receipt and distribution of child pornography), and 2252A(a)(5)(B) (possession of child pornography) (collectively, the "Subject Offenses") including:

a. Records concerning the sexual exploitation of a child, receipt and distribution of child pornography, and possession of child pornography, including communications and content (*e.g.*, visual depictions) exchanged between Melissa MCDOUGAL and Devon LAVALLEY.

b. Any visual depictions of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, and any visual depictions that might not meet the definition in the foregoing section but that depict partly or fully nude children;

c. Any visual depictions of MCDOUGAL or LAVALLEY;

d. Records evidencing intent, knowledge, and/or plan to commit the Subject Offenses;

e. Records evidencing a sexual interest in children and/or child sexual abuse material such as visual depictions of children engaged in sexually explicit conduct, writings or drawings describing or depicting sexual activity involving children, or participation in chatrooms, social media groups, or private conversations concerning the sexual abuse of children and/or visual depictions of a children engaged in sexually explicit conduct.

f. Records concerning ownership and/or control of the device identified in Attachment A;

g. Records of any passwords, passcodes, electronic keys, encryption codes, or any other electronic record for the purpose of using such record to gain access to all or part of the data on the device identified in Attachment A.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts, including the New York State Police. Pursuant to this warrant, the HSI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.